UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHARLES A. MOON, JR.,

    Plaintiff,

        v.                                CAUSE NO. 3:22-CV-295-RLM-JEM

TIESHA NASH, et al.,

    Defendants.

OPINION AND ORDER

Charles A. Moon, Jr., a prisoner without a lawyer, filed a complaint against six defendants. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). 28 U.S.C. § 1915A.

Mr. Moon alleges that on November 23, 2020, Lt. Tiesha Nash (formerly Sgt. Nash) issued a false conduct report, WCA 20-11-0352, in which she accused him of refusing an order in violation of Indiana Department of Correction offense C-347. ECF 1 at 3; ECF 1-1 at 2. The conduct report states that while conducting rounds on R-3 Dorm at about 8:30 that morning, Lt. Nash noticed that Mr. Moon's bed area wasn't in compliance. The report indicated that "[i]t was at that time when [Lt. Nash]

advised offender Moon of the expectation for compliance." ECF 1-1 at 2, and ordered him to clean his bed area. Lt. Nash conducted another round on R-3 Dorm around 1:00 that afternoon and noted Mr. Moon had refused to obey her orders because his bed area still wasn't in compliance.

Mr. Moon asserts the conduct report is false because he didn't have a conversation with Lt. Nash that day about the expectations of compliance. Mr. Moon contends that his conversation with Lt. Nash about the expectations of compliance was on November 18, when he told Lt. Nash that the items she referred to on his bed were his legal materials and he was using them. Mr. Moon asserts that Lt. Nash told him he only needed to take down his boxer briefs as they couldn't be hung up in his room. Thus, he contends that he never had a conversation with Lt. Nash other than on November 18, and she didn't give him a direct order to clean his bed area. Mr. Moon says Lt. Nash didn't note in her conduct report that, on November 23 and 24, she conducted her rounds with Cpt. L. Machin, who both entered his room twice looking for anything that could be used to write him up.

Mr. Moon was later screened for the C-347 0charge and DHB Officer R. Nash found him guilty of committing the offense.

While Mr. Moon was found guilty of offense C-347, he doesn't say if he lost credit time. If Mr. Moon had lost credit time, he couldn't pursue a claim that he was wrongfully charged until the guilty finding was overturned. *See* Edwards v. Balisok, 520 U.S. 641, 643 (1997) ("[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if a judgment in favor of the plaintiff would necessarily imply

2

the invalidity of his conviction or sentence, unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated."). Mr. Moon's complaint doesn't allow an inference that the disciplinary charge has been overturned.

Because it doesn't appear that Mr. Moon lost credit time, the due process clause doesn't apply. "The due process clause of the fourteenth amendment . . . applies only to deprivations of life, liberty, and property. Otherwise states are free to act summarily." Marion v. Radtke, 641 F.3d 874, 875 (7th Cir. 2011). Termination from a prison job, the loss of privileges, or a transfer to a less desirable location do not trigger due process protections. Cochran v. Buss, 381 F.3d 637, 641 (7th Cir. 2004) (claims that inmate "lost his preferred prison living arrangement, his prison job and his eligibility for rehabilitative programs" weren't significant enough to trigger due process concerns); DeTomaso v. McGinnis, 970 F.2d 211, 212 (7th Cir. 1992) ("prisoners possess neither liberty nor property in their classifications and prison assignments"). Mr. Moon can't proceed on his allegations that DHB Officer Nash violated his due process rights.

Next, Mr. Moon asserts that Cpt. Machin, UTM Dennis Hood, and Lt. Nash retaliated against him in violation of the First Amendment for filing grievances and exercising his procedural due process rights. Under the First Amendment, an inmate can't be punished for engaging in certain kinds of speech. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least

3

a motivating factor in the Defendants' decision to take the retaliatory action." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). "A complaint states a claim for retaliation when it sets forth a chronology of events from which retaliation may plausibly be inferred." Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000) (quotation marks omitted). Mr. Moon alleges only that Cpt. Machin and UTM Dennis Hood designated Lt. Nash to write false conduct reports as an act of reprisal for filing grievances against Lt. Nash's supervisors and exercising his procedural due process rights. Douglas v. Reeves, 964 at 646 ("[G]rievances against prison officials [] fall within the First Amendment's protections."). He hasn't indicated when he filed the grievances and why he believes the filing of the grievances was related to the false conduct reports. Therefore, Mr. Moon has not sufficiently pled facts in his complaint to support a retaliation claim.

Mr. Moon also sues Warden John Galipeau and Deputy Warden Kenneth Gann, but other than listing them as defendants in the caption of the case, he never mentions them in the body of the complaint.

Mr. Moon has raised a number of claims that he characterizes as intentional infliction of emotional distress, mental suffering, embarrassment, humiliation, and improper deprivation. To the extent these claims constitute state law claims, the Indiana Tort Claims Act bars a tort claim against a political subdivision unless notice is filed with the governing body of the political subdivision and its risk management commission within 180 days of the loss. VanValkenburg v. Warner, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992); Ind. Code § 34-13-3-8. The notice requirement applies not

4

only to political subdivisions but also to employees of political subdivisions as well. *Id.* Mr. Moon's complaint doesn't include any allegations that he complied with the notice requirements of the Indiana Tort Claims Act.

Mr. Moon's complaint doesn't state a claim for which relief can be granted. Mr. Moon may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint, because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS Charles A. Moon, Jr. until **June 2, 2023**, to file an amended complaint; and

(2) CAUTIONS Mr. Moon that if he doesn't respond by June 2, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on May 3, 2023

                                                s/ Robert L. Miller, Jr.
                                                JUDGE
                                                UNITED STATES DISTRICT COURT